Thank you, Your Honor. May it please the Court, Richard Burson, Assistant United States Attorney, representing the Appellant United States in this matter. The United States brought this appeal because the District Court, in granting a motion to suppress in this case, based on the reading of its decision here, applied a subjective standard to a state law statute requiring, according to the state courts and according to the early statements in the District Court's opinion, an objective, reasonable person analysis as to the question of whether a subject's, in this case the defendant's, conduct and displaying of a firearm warranted alarm for the safety of other persons. Judge O'Connell Well, the judge cited the correct standard, right, counsel, if we can cut to it. The judge's order cites the correct standard, yes? Judge Burson That is correct, Your Honor. Judge O'Connell Okay, so your argument is he didn't apply it correctly? Is that your argument? Judge Burson That's correct, Your Honor. And I think it's clear from the District Court's order that in applying it, he applied a subjective standard. So whether we classify that as a misinterpretation of the statute or a misapplication of the statute, that's something that this Court should take under review de novo because the United States is not disputing any of the factual findings in the District Court's order. Judge O'Connell Well, what if I don't find that persuasive? What if I don't find that persuasive? There's a couple examples where he looked to and cited subjective reactions of a couple of witnesses. Does that necessarily mean that he applied the objective standard or failed to apply the objective standard? Judge Burson I think there's two main reasons that it is apparent that the District Court applied a subjective standard. The first is that the factual findings of the District Court, including the frankly delusional statements of the defendant while displaying a firearm at one point according to a reporting party racking the slide, kind of like you'd see in a movie, the fact that two independent reporting parties felt concerned enough at least to call police regarding the defendant's behavior. I think all of those facts viewed from an objective, reasonable person standpoint, I think the inescapable conclusion is that the objective facts did warrant cause for alarm for the safety of others. And frankly, the only way the District Court could have made the finding it found is to apply a subjective standard or, in the alternative, just place undue weight on the fact that the two reporting parties here did not themselves feel threatened according to their statements to the arresting officer. Judge O'Connell How do we know that the court gave undue weight to the subjective finding? I think it's because just from the wording of the District Court's opinion, Your Honor, in the District Court's order, in sort of wrapping up its finding, it says, and I think it classifies it as significantly important, actually, that the reporting parties themselves did not feel threatened or were not directly threatened. And I think that's the opposite of the analysis. It's not supposed to be particularly important that the reporting party felt concerned for their own safety. If that were the case, then the other prong of the statute would have been triggered. But this statute has two prongs. One, an actual intent to threaten, in which case that subjective analysis would probably be given great weight. And two, this concern for others, in which case the fact that someone did not feel subjectively threatened themselves should not carry significant importance, certainly not the importance that the District Court appeared to give in its opinion. So your argument, counsel, is that the District Court erred, and I think you have to be arguing that we're in as good a position as the District Court to decide what this hypothetical reasonable person would conclude about whether there was cause to be concerned about the safety of the kidnappers. Is that right? That is correct, Your Honor. Yes. Okay. Let me ask you this. Did the, well, two things. Did the District Court ever indicate that he was considering the safety of the kidnappers, whether a person would, a reasonable person would be concerned about the safety of those people? The District Court never opined one way or the other whether it would be concerned about these kidnappers if the defendant was supposedly... Okay, so that's a no? Supposedly. Is that a no? Yeah. That's a no, Your Honor. The District Court never got there. Okay. My next question, and I'm trying to move you along so I don't take up too much of your time. My next question is whether the District Court, in applying this exclusionary rule, whether there was any indication that the Court considered the likelihood that applying the exclusionary rule would have a deterrent effect here? The District Courts never got into whether or not the application of the exclusionary rule, I don't believe, would have the deterrent effect on future arresting or investigating officers. Right. And the Supreme Court has been, I mean, there's Herring, there's Hudson, there's Leon. The Supreme Court has said this is our last resort. But I don't see, in fairness, and this is for both of you, I don't see why the United States argued this point. Did the United States ever challenge application of the exclusionary rule in this case? I don't believe it did, Your Honor, no. Or argue the good-faith exception? No, Your Honor. The main thrust of our argument, really the primary and sole argument raised below was that probable cause to make an arrest had been established here. Okay. And so to get back to that, and I appreciate that's your, and I appreciate your candor and that that's your argument, and your argument seems to me to rely on the second prong of the statute, that a reasonable third person, the judge was wrong, I think is what you're saying in making this finding, that there was probable cause that a reasonable hypothetical person out there in the ether would decide that there was this constellation of circumstances, which seems to be uncontested, would give a reasonable person cause for concern about the safety of the kidnappers. Is that it? That is correct, Your Honor. And just to be clear, we're not taking issue with the factual findings, which is why we're asking for a non-deferential standard of review here. We're taking, we take issue with the finding that those facts did not give rise to probable cause, and our sort of follow-up position is that the only way the court could have reached that determination was by applying a subjective instead of objective analysis. Any other questions? Given that the trial court had to look at the totality of the circumstances, what would contribute to a finding of a violation of the statute, other than that he racked the weapon, he racked it but then he put it down? What other than the fact of racking the weapon would contribute to an overall finding? So other than the racking of the weapon, Your Honor, given the totality of the circumstances, primary facts giving rise to a concern for the safety of others in an objective, from an objective point of view, is frankly the statements that the defendant was making. He was sort of driving around this area, approaching folks he didn't know, and making statements indicating that he had been previously kidnapped and held against his will, and he was now combined with the display of a weapon, combined with the racking of the slide. Respectfully, Your Honor, it would give anyone concern for the safety of others. It certainly did with respect to the two reporting parties who at least felt concerned enough to call police in an area, as I believe the defendant pointed out, either here or below, where guns are not uncommon in the portion of the state where this took place, and even though guns aren't uncommon, those reporting parties felt concerned enough to call police. So, Counsel, what are we supposed to take from the fact that in Washington it is presumptively lawful to carry a firearm? If it's presumptively lawful to carry a firearm, that the mere carrying of a firearm can't be the cause of alarm under 9.41.270. Isn't that right? Yes, Your Honor, that's absolutely correct, and I think that is what differentiates this case from Brown, cited in, I believe, all parties' briefings, where the only thing that was occurring, according to the reporting party in that case, and the only thing that the officer had knowledge of when he attempted to detain the individual was that he was carrying a gun. There were no other circumstances that gave rise or caused... So what's different about this case from the mere carrying of a weapon, which you've just said is not sufficient to cause alarm for the safety of others? If the defendant had approached these two reporting parties and said that he was looking for the Safeway, the local Safeway or the post office, and had the firearm resting on his dashboard, for instance, that would not be violative of the statute and certainly wouldn't give rise to probable cause. But that's not what happened here. What happened here is the defendant made, frankly, bizarre statements indicating that he was either seeking retribution or attempting to apprehend someone, when the reality is those people didn't exist. Telling the neighbors that he was looking for someone because he thought he'd been kidnapped now qualifies under the Washington Code. That warrants alarm for the safety of other persons. So that alone is sufficient. He said, I was kidnapped. I'm looking for a storage shed that matches these characteristics. Do you know where one is? That coupled with displaying the gun and racking the gun? Yes. Are there any other circumstances in the Constellation? I think that's what we're both trying to get at. What else is there in those baskets? What are those surrounding circumstances? That, I think, is a fair description of the universe of events here, the totality of the circumstances that this court has to look at. But I don't think we can dismiss the fact that these statements appeared to be somewhat delusional and that two independent parties felt concerned enough to call the police. Let's take a long view of this. We have the two 911 calls that come in. And at that point, the police are concerned, so they call the DA's office. And said, we think you ought to issue an arrest warrant for Mr. Willie. The DA have enough to go off of the two 911 calls to issue an arrest warrant? That's got to be the government's position, doesn't it? Because if you can't issue the arrest warrant, the DA can't issue an arrest warrant, then the officer certainly doesn't have any greater authority because no crime has been committed in his presence. So the government's position has to be that on the basis of the two 911 calls, that the DA can issue a warrant for the arrest, can seek an arrest warrant. Is that right? I think that given the statements of the reporting parties and the fact that they had identified a photo of the defendant, and so there was cooperation there, at least with respect to identity. I think if a DA had taken those statements as true, and we set aside the fact that it would have been coming secondhand from an officer, and that perhaps the DA would have wanted to vet that a little more. If we take those statements from the reporting parties as true, then yes, probable cause would have existed here, Your Honor. Counsel, you're significantly over your time, so I'm going to end it there. When you come back, we'll put two minutes on the clock for your rebuttal. We'll hear from opposing counsel, please. Thank you. May it please the Court, Jeremy Sporn, Federal Defenders in Yakima, Washington. On behalf of the appellee, Mark Willey, good morning, Your Honors. I want to start out emphasizing that the interactions between Mr. Willey and these reporting parties were both brief, both non-threatening, both not hostile or aggressive. Mr. Willey did not point the firearm at either of them. He had no argument or unpleasantness with either of these two people, neither of whom were distressed or concerned, and neither was Mr. Willey. I don't mean to pick at you, but I think you seem to be arguing based on their subjective view. Is that what you're doing? They said they were not alarmed. I wasn't intending to argue based on their subjective views, but I do want to make the observation that that universe of facts stands in stark contrast with the cases that the state prosecutes under this statute. Those are referenced on page 17 of my briefing, and I think that really reframes the argument here because the cases suggest that this warrants alarm clause is linked to, contextualized, and limited by threats and intimidation on the part of the defendant or suspect. I want to read to the court a quote from State v. Masiolik, a Washington Supreme Court case from 1984. In a footnote, it said, if a weapon is displayed in a manner, under circumstances, and at a time or place so that poses a threat to another person, such a display would warrant alarm for the safety of another. Thus, narrowly construing the phrase to apply to only conduct that poses a threat to others gives the phrase a narrow and definite focus and saves it from vagueness. So, in terms of the kinds of conduct that warrant alarm, that's what the focus is on, and that's what limits it, these threats and intimidations. The government is aware that it can't show clear error as to the judge's facts finding, so they come up, I think, rather cleverly with this legal error in terms of the standard that the judge... Can I stop you there? Because this seems to be an unusual case where the facts, as in the circumstances that Judge Bybee and I think all of us now have asked about, seem uncontested to me. And so, do you disagree with what I was asking opposing counsel about earlier? That we're not looking at a historical fact, we're reassessing the trial court's determination that a reasonable third party, this hypothetical person, would or would not have cause for concern for the safety of others. Aren't we in as good a position to make that call as the trial court? I don't think so, Your Honor, and here's why. I think there's a problem, an initial structural problem with the government's argument that took this standard of a reasonable person, and then the government kind of runs with it where it wasn't intended to go. If we look at the case that it got that standard from, State v. Spencer, cited in the government's briefing, the State made... Excuse me, the Spencer Court made that of that case. The focus within which the court made the statement was from the perspective of the defendant or the suspect or the person displaying the weapon. I don't believe reading that case fairly, it was intended to get into the state of mind of, in this case, the reporting parties. I agree, but doesn't that get us back to where I thought we were, which is that we're supposed to determine whether this finding is not a historical finding of fact. Do you agree with that? I agree with that. It doesn't matter what the witnesses subjectively felt, whether they were alarmed or not. I'm trying to get at whether we are in a position to make this determination as good a position as the trial court. I don't believe it is, Your Honor. I think the court is limited by a deferential standard of review as to the court's factual findings, and I don't think it's... Counsel, I just need you to break that down for me because the circumstances that went into this probable cause finding, I think, are uncontested facts. Nobody's arguing about that. The record in terms of the facts that this court and the district court has before it are largely uncontested. I would agree with that, Your Honor. Okay, so what am I missing? Where I think we part ways is that the district court made a factual finding that Mr. Willie's conduct did not warrant alarm for the safety of other persons or that the arresting officer lacked probable cause to make an arrest for that offense, and I think that's a factual finding that warrants deference on the part of... That's what I keep asking. Why is that? There are rare occasions where we are in as good a position. I'm just trying to... I don't mean to belabor the point. I'm just trying to tease out why isn't this one of those instances? I think it's one of the elements that's needed to complete the offense or to have probable cause. The district court found that it was lacking, and the government is trying to shoehorn in this question of whether the proper standard was applied. I think there's three things that the government needs to be right on to warrant reversal in this case. They need to show that this standard exists in the first place and that it's authoritative. They need to show that the district court ignored it or did not apply it in its reasoning, and they need to show that ultimately it leads to a different result in terms of probable cause than what the district court found below, and I don't think it can make any of those showings. The case where this came about, State v. Spencer, was one case. It was a Washington Court of Appeals case in a different division than the division where the events occurred, and it took place, as I mentioned before, in the context of deciding a vagueness challenge from the point of view or the state of mind of the violator, not the reporting parties. So this court is not bound by that standard. I thought we just clarified, maybe I should just ask you, what is your view about the correct standard? What question are we answering and what is the correct standard? Because now you've lost me about what your position on that point is. I apologize for that, Your Honor. I'm sure it's me. If you could just give it to me again, what do you think the correct standard is? My argument, Your Honor, is that the standard goes on the state of mind of the violator rather than seeking to look at what a hypothetical, objective, reasonable person should have done or how they should have reacted or necessarily how these individual reporting parties reacted. That answers my question. I got it. Counsel, to follow up on Judge Christian's question, that would seem to be okay on the prong of the statute that says manifests an intent to intimidate another. That is, the state of mind of the violator would seem to be irrelevant there. Or that warrants alarm for the safety of others seems to shift the focus from how should other people respond to this, not whether there's an intent to warrant alarm for the safety of others. That doesn't make any sense. And I think for that reason, Your Honor, we get into the sorts of vagueness problems that the court was taking up in the Masiolik opinion that I cited earlier and some other cases as well. And for that reason, courts in Washington State have said, well, that's why it really goes back and is cabined by threats or intimidation on the part of the violator. And when you divorce the two, you get into areas where the defendant really has no expectation or no fair notice of what's prescribed and what isn't based on how objective hypothetical third parties may react. Okay. Counsel, the most critical fact here for me, the most important fact, the most damning fact to your client is the fact that he racked the gun. What possible purpose was there to rack the gun except as a show of strength? I don't know, Your Honor. Like I believe Mr. Burson said, it was something like you see in the movies. I would point out that that incident occurred not in both of the two interactions, but just in the first. Did it occur in the first or the second incident? It occurred in the first only. First incident. Okay. Do we know which window the neighbor, he was talking to the neighbor through, the passenger side or the driver's side? I'm not sure that the record reflected which side. Is your client right-handed or left-handed? That I'm not sure about, Your Honor. Okay. Do we know which way, was he pointing the gun in the direction of the neighbor when he racked it or was he pointing it at the opposite window? He was not pointing it at the reporting party at no time during the incident. Did he point it in the direction of the reporting party or anyone else? We don't know whether he's pointed at the floorboards or pointed at the ceiling or pointing it out of the opposite window. That's correct, Your Honor. My understanding is that the gun was on the passenger seat or the dashboard. He picked it up, racked it, and then put it down. What if your client had said something like, let's assume for purposes of my question, that reporting person number one does not feel alarmed, does not feel intimidated, but was concerned enough to call 9-1-1 because, let's suppose that your client said, I'm looking for some guys who kidnapped me. I'm looking for a red shed. Do you know of anything in the neighborhood that's got a red shed? Because if I find these guys, I'm going to get them and he racks the gun. Now, do the police have probable cause at that point to arrest your client? I think it would certainly be closer than what we had. And the statement, if I find them, I'm going to get them, may push us over the line towards probable cause, as opposed to what we had, this sort of vague, generalized statement, which, by the way, if the government's correct that this was purely hallucinatory and nothing happened, then I think it diminishes the other side of its argument that someone out there, the kidnappers or in danger, someone who doesn't exist and who Mr. Willie evidently would never have found in the first place. But if he was hallucinatory, then he might have he might have hallucinated the violators as well. He's kidnappers. So I mean, again, the racking seems to me to be the most the most dangerous, the most dangerous thing here, because it's not clear that it serves any conceivable purpose except to put a bullet in the chamber and make the gun fireable at will. I would agree, Your Honor, that that's probably the government's best fact. But I think that fact alone, combined with the rest of the record, doesn't push us into probable cause territory, given the entirety of the record or the totality of the circumstances. So you're substantially over time. Let me just check to see if Judge Selma, do you have any questions? No, I've had my okay. Thank you for your argument. Thank you, Your Honor. You bet. Counsel? Counsel for the government? Hello? You're muted. That's the problem. We can't hear you. There you go. And thank you for that as well, Your Honor. Okay, go right ahead. So the government does just want to address this point here again about whether or not we're reasonable person standpoint or whether an actual, some sort of objective threat is made or communicated or something of that nature. If that's all the conduct that the legislature of Washington wanted to prohibit, they could have capped the statute after the line about or the prong about manifesting an intent to intimidate another. They could have stopped there, but they triggers an objective reasonable person standpoint because they wanted to encapsulate conduct and prohibit conduct such as this. And I think the reason that the case law regarding the statute of question here is not necessarily the best fit for this case is because this case differs from those cases in that here we have someone who seems to be communicating some mental unwellness. And that's what's creating the concern for harm, not that he actually has... Forgive me for interrupting, but you said a couple of times exhibiting mental unwellness, and I think you used the word bizarre a little earlier. So I just want to make sure that I'm understanding where that comes from. Did the dispatcher indicate that either the witnesses used any kind of adjective like that in reporting this to the deputy? I believe when the deputy testified in this case, he communicated that his understanding from the reporting parties, given what he was observing and hearing, was that they were concerned that he was not all there. I think that was the deputy's interpretation. They were concerned enough to call the police, as Judge Bybee pointed out. But do you have an ER site for that place in the transcript where the deputies were interpreting? You think it's in the deputy's testimony? During the deputy's testimony, he is asked, I believe by me, whether or not he believed that the reporting parties were concerned and what they were concerned about. I've been paraphrasing slightly there. And then he opines something to the nature of he was concerned, or the reporting parties were concerned about something of the nature that I've been describing here. But yes, that is in the deputy's testimony. I've got it. Thank you. Thank you both for your argument. We'll take this case under advisement.
judges: BYBEE, CHRISTEN, Selna